

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
05/18/2010

| In re: | § | |
|---|---|---|
| | § | |
| BIGLER LP; | § | Case No. 09-38188 |
| BIGLER LAND, LLC; | § | Case No. 09-38189 |
| BIGLER PETROCHEMICAL LP; | § | Case No. 09-38190 |
| BIGLER PLANT SERVICES, LP; | § | Case No. 09-38192 |
| BIGLER TERMINALS, LP; | § | Case No. 09-38194 |
| | § | |
| Debtors. | § | |
| | § | Chapter 11 |
| | § | Jointly Administered Under |
| | § | Case No. 09-38188 |

| ASHLEY ELIZABETH SCIANNA ARORA INVESTMENT TRUST | § | |
|---|---|---|
| | § | |
| STEPHANIE ELIZABETH SCIANNA INVESTMENT TRUST | § | |
| | § | |
| Plaintiffs, | § | Adversary No. 10-03029 |
| | § | |
| V. | § | |
| | § | |
| AMEGY BANK NATIONAL ASSOCIATION | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION ON: (1) DEFENDANT'S MOTION TO STRIKE FIRST AMENDED COMPLAINT TO DETERMINE EXTENT AND PRIORITY OF LIENS; AND (2) DEFENDANT'S MOTION TO DISMISS ORIGINAL COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**
[Adv. Docket Nos. 7 & 12]

### I. INTRODUCTION

This adversary proceeding involves a dispute over lien priorities, which is by no means a novel issue. However, the procedural sparring in the early stages of this suit does involve the

1

application of the newly-amended Federal Rule of Civil Procedure 15. This Memorandum Opinion addresses the application of this recently amended rule to the pending motions. Moreover, this Memorandum Opinion addresses an issue which is very important to post-petition lenders in Chapter 11 cases; namely, to ensure that these lenders carefully draft the orders approving post-petition financing and the debtor's use of cash collateral to the extent that they want these orders to serve as a bar to third parties from subsequently challenging the liens that they had acquired.

## II. FINDINGS OF FACT

1. On October 30, 2009, Bigler LP and four affiliated entities (the Debtors), filed voluntary Chapter 11 petitions. [Main Case Docket, No. 1]. These five Chapter 11 cases are jointly administered under Case No. 09-38188. On November 24, 2009, this Court approved an interim agreed order approving post-petition financing and use of cash collateral. [Main Case, Docket No. 91]. This order became a final order on December 9, 2009 (the Final DIP Order). [Main Case, Docket No. 123]. No Chapter 11 plan has yet been confirmed.

2. On January 23, 2010, Charles C. Scianna, Jr. and Rita A. Scianna, in their capacity as trustees of the Ashley Elizabeth Scianna Arora Investment Trust and the Stephanie Elizabeth Scianna Investment Trust (the Trusts), filed a Complaint to Determine Extent and Priority of Liens (the Original Complaint) against Amegy Bank National Association (Amegy). [Adv. Docket No. 1]. The relief requested in the Original Complaint is that this Court declare that the Trusts hold a first, prior and superior lien in certain property owned by the Debtors (the Property).

3. On March 16, 2010, Amegy filed its Motion to Dismiss Complaint for Failure to State a

Claim upon Which Relief Can Be Granted (the Motion to Dismiss the Original Complaint). [Adv. Docket No. 7]. In the Motion to Dismiss the Original Complaint, Amegy argues, among other things, that the Trusts did not take an assignment of any security agreement, and, therefore, they lack standing to bring suit.

4. On May 10, 2010, the Trusts filed their Opposition to Motion to Dismiss the Original Complaint. [Adv. Docket No. 10].

5. On May 10, 2010, the Trusts also filed their First Amended Complaint to Determine Extent and Priority of Liens (the First Amended Complaint). [Adv. Docket No. 9]. The First Amended Complaint is filed not only by the Trusts, but also by a newly-added plaintiff, Sim-Tex, L.P. (Sim-Tex) (collectively, the Trusts and Sim-Tex are hereinafter referred to as the Plaintiffs). The relief requested in the Amended Complaint is identical to the relief requested in the Original Complaint; namely, that this Court declare that the Trusts hold a first, prior and superior lien on the Property. No relief is requested for Sim-Tex.[1]

6. On May 12, 2010, Amegy filed its Motion to Strike the First Amended Complaint (the Motion to Strike the Amended Complaint). [Adv. Docket No. 12].

7. On May 12, 2010, this Court held a hearing on the Motion to Dismiss the Original Complaint and the Motion to Strike the Amended Complaint. Counsel for each of the parties made oral arguments, and this Court took the matters under advisement.

---

[1] Although the Amended Complaint does not expressly request relief for Sim-Tex, it is clear from oral arguments made at the May 12 hearing that if the assignment of the debt and corresponding lien to the Trusts is defective, then Sim-Tex will seek the same relief now being requested by the Trusts: namely, that whatever lien is held on the Property is superior to whatever lien Amegy holds on the Property.

3

### III. CONCLUSIONS OF LAW

#### A. Jurisdiction and Venue

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K), and (O). Venue is proper pursuant to 28 U.S.C. § 1409.

#### B. The Motion to Strike the Amended Complaint

Amegy makes three arguments in support of the Motion to Strike the Amended Complaint.[2] First, with respect to addition of Sim-Tex as a newly-added plaintiff, Amegy argues that Sim-Tex failed to file a motion seeking leave to intervene pursuant to Bankruptcy Rule 7024. That rule requires that a party desiring to intervene in a pending adversary proceeding file a motion with the court.

Second, with respect to amending the Original Complaint, Amegy argues that the Trusts (the only two plaintiffs who filed this pleading) failed to seek leave to amend pursuant to Rule 15(a)(2). That rule expressly states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Because: (1) the Trusts failed to obtain permission from this Court to amend; (2) Amegy never gave written consent; and (3) Amegy contends that in this instance, justice does

---

[2] Reference to a "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure. Any reference herein to "the Code" refers to the United States Bankruptcy Code. Further, reference to any section (i.e. §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code. Reference to a "Rule" refers to the Federal Rules of Civil Procedure. Whenever there is a reference to a "Rule," it is because the applicable Bankruptcy Rule states that the applicable Federal Rule applies. For example, Bankruptcy Rule 7024 concerns intervention in an adversary proceeding, and this Bankruptcy Rule expressly sets forth that Federal Rule 24 applies.

4

not require that the Amended Complaint be allowed, Amegy vigorously argues that the Court should grant the Motion to Strike the Amended Complaint. [Finding of Fact No. 6].

Third, Amegy points to paragraph 24 of the Final DIP Order in the main case as a bar to the Plaintiffs seeking a declaratory judgment that they hold a lien superior to that of Amegy. Although the Plaintiffs have not filed a written response to the Motion to Strike the Amended Complaint, their counsel orally rebutted this motion's arguments at the May 12, 2010 hearing.

### 1. Contrary to Amegy's position, Sim-Tex may intervene in this adversary proceeding pursuant to Rule 24.

The Plaintiffs argue that Sim-Tex has a mandatory right to intervene under Rule 24(a)(2) because it asserts an interest in the Property and is so situated that disposing of the action may as a practical matter impair or impede Sim-Tex's ability to protect its interest. Alternatively, the Plaintiffs contend that Sim-Tex should be allowed to permissively intervene under Rule 24(b)(1)(B) because Sim-Tex has a claim against the Property that it shares with the Trusts.

#### i. Mandatory Intervention

Rule 24(a)(2) reads as follows: "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Fifth Circuit outlines the requirements for mandatory intervention as follows: (1) intervention must be timely; (2) the applicant must have an interest relating to the property which is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the ability of the applicant to protect the interest; and (4) the applicant's

5

interest is inadequately represented by the existing party. *Valley Ranch Dev. Co. v. Fed. Deposit Ins. Corp.*, 960 F.2d 550, 556 (5th Cir. 1992).

Taking these four factors into account, this Court concludes that mandatory intervention is appropriate. First, Sim-Tex's intervention was timely. The adversary proceeding was filed on January 23, 2010. [Finding of Fact No. 2]. On May 10, 2010, the Plaintiffs filed the First Amended Complaint, less than five months after the filing of the Original Complaint, and less than two months after the filing of the Motion to Dismiss the Original Complaint. [Finding of Fact Nos. 1, 3 & 5]. Second, Sim-Tex may still have an interest in the Property. Indeed, Sim-Tex loaned the initial proceeds to the Debtors, and, if Amegy's allegation is correct that Sim-Tex's assignment of the lien to the Trusts is defective, then Sim-Tex would then have an interest in the Property. [Finding of Fact No. 4, ¶ 6]. Third, the disposition of this action would impair or impede the ability of Sim-Tex to protect its interest because of the estoppel effect of this action. Finally, Sim-Tex's interest is inadequately represented by the Trusts because without Sim-Tex joined in this action, if the assignment were found defective, then the Trusts would not have standing to prosecute the adversary proceeding. Therefore, all four factors are satisfied. Accordingly, mandatory intervention pursuant to Rule 24(a)(2) is appropriate.

### ii. Permissive Intervention

In the alternative, if this Court is incorrect in concluding that Sim-Tex's intervention is mandatory, permissive intervention is appropriate because Sim-Tex's cause of action is the same as the Trusts. Rule 24(b)(1)(B), which governs permissive intervention, states that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Here, if the evidence indicates that the

6

assignment from Sim-Tex to the Trusts was defective, then Sim-Tex has the same cause of action as the Trusts are asserting: namely, that its lien on the Property is superior to Amegy's lien on the Property.

2. **Contrary to Amegy's position, the Trusts may amend their Original Complaint pursuant to Rule 15(a)(2).**

The Plaintiffs contend that they have the right to amend the Original Complaint as a matter of course under Rule 15(a)(1)(A). At the May 12, 2010 hearing, counsel for the Plaintiffs argued that because Amegy has never filed its answer to the Original Complaint, the Plaintiffs were free to file the Amended Complaint without leave of Court. This Court disagrees. The Plaintiffs appear to be relying upon the now-defunct Rule 15(a)(1)(A)—*i.e.*, the Rule that was in effect prior to December 1, 2009. That Rule did indeed state that "A party may amend its pleading once as a matter of course before being served with a responsive pleading." However, that Rule was replaced with new language, which became effective on December 1, 2009. The language that is applicable to this suit reads as follows: " A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

Application of Rule 15(a)(1)(A) works against the Plaintiffs because the Original Complaint was filed on January 23, 2010. [Finding of Fact No. 2]. Thus, the Original Complaint could be freely amended within 21 days of January 23, 2010—*i.e.*, by February 13,

2010.[3] Yet, the Amended Complaint was not filed until May 10, 2010—*i.e.*, almost two months after the deadline. [Finding of Fact No. 5].

Likewise, application of Rule 15(a)(1)(B) works against the Plaintiffs because Amegy filed the Motion to Dismiss the Original Complaint on March 16, 2010. [Finding of Fact No. 3]. There is no question that this motion is brought pursuant to Rule 12(b)(6), and therefore, there is no question that the Plaintiffs had 21 days from March 16, 2010 to freely amend—*i.e.*, by April 6, 2010. Yet, as noted above, the Amended Complaint was not filed until May 10, 2010—*i.e.*, more than one month after the deadline. Accordingly, this Court concludes that the Plaintiffs were not at liberty to freely amend when they filed the Amended Complaint on May 10, 2010. Therefore, if the First Amended Complaint is to stand, Rule 15(a)(2) must apply.

Rule 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The key issue is the meaning of the phrase "when justice so requires."

While it is true that Rule 15 "'evinces a bias in favor of granting leave to amend,' it is not automatic." *Matagorda Ventures v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). In determining if leave to amend a pleading should be granted, a court may consider a number of factors, including, but not limited to, the following: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Id.*

---

[3] Because February 13, 2010 was a Saturday, the deadline actually would be the following Monday. Bankr. R. P. 9006(a)(1)(C). However, because Monday, February 15, 2010 was a federal holiday, the deadline was actually Tuesday, February 16, 2010. *Id.*

(citing *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Ultimately, the decision lies within this Court's discretion. *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992).

In applying this Court's discretion to the five factors used in determining whether justice requires amendment of a pleading, this Court concludes that justice does so require allowing the amendment of the Original Complaint. In regards to the first two factors, there is no undue delay or bad faith or dilatory motive by counsel for the Plaintiffs, as he was acting in accordance with what he thought the law was.[4] There is nothing in the record indicating that Stroube repeatedly failed to cure deficiencies by amendments previously allowed. Moreover, there is no undue prejudice to the Amegy, as it can certainly file a motion to dismiss the Amended Complaint. Indeed, this adversary proceeding is in its infancy; Amegy has yet to file an answer, and discovery has not occurred. Finally, this Court concludes that the amendment is not futile, as it adds an additional party to the adversary proceeding—*i.e.*, Sim-Tex—who may well have a stake in the outcome of this suit if its assignment of the debt and corresponding security interest to the Trusts was defective. Accordingly, justice requires amendment of the Original Complaint.

---

[4] The Federal Rules of Civil Procedure were amended on December 1, 2009, less than six months ago. Rey Stroube (Stroube), counsel for the Plaintiffs, is an attorney with approximately thirty-five years of experience. He is, however, a solo practitioner, lacking the army of associates and paralegals that attorneys working for both big and even small firms have at their fingertips. Indeed, Stroube stated on the record that he performed his legal research in the courthouse library and incorrectly thought he was within Rule 15's time limit for amendment. Under the old Rule 15, Stroube would have been correct. However, as already noted herein, this Rule was amended and the amended Rule became effective December 1, 2009. In the future, Stroube—and all practitioners—need to ensure that they become aware of changes in the Federal Rules of Civil Procedure.

### 3. Contrary to Amegy's position, Paragraph 24 of the Final DIP Order does not bar the Plaintiffs from bringing this adversary proceeding.

Finally, Amegy contends that the Plaintiffs are barred from obtaining the relief sought because of language in paragraph 24 of the Final DIP Order. [Finding of Fact No. 1]. That paragraph reads as follows:

> Notwithstanding anything herein to the contrary, for a period equal to the lesser of (a) sixty (60) days after the entry of the Interim Order and (b) the date of the confirmation of any plan of reorganization or liquidation in these Cases, the Committee and any other party in interest shall be entitled to investigate the amount, validity, perfection and enforceability of the Pre-Petition Agent's liens and secured interests held on behalf of itself and the Pre-Petition Lenders and the obligations arising under the Pre-Petition Loan Documents, or to assert any other claims or causes of action against the Pre-Petition Agent and Pre-Petition Lenders (the "Pre-Petition Investigation Termination Date"). If the Committee or any other party in interest determines that there may be a challenge to the liens or claims of the Pre-Petition Agent or the Pre-Petition Lenders by the Pre-Petition Investigation Termination Date, upon three (3) business days' written notice to the Debtors and the Pre-Petition Lenders, the Committee or any other party in interest shall be permitted to file and prosecute an adversary proceeding related thereto, and shall have only until the Pre-Petition Investigation Termination Date to file such adversary proceeding **on behalf of the Debtors' estates** setting forth the basis of any such challenge, claim or causes of action. If such action is not filed on or before the Pre-Petition Investigation Termination Date (or such other later date as extended by the written consent of the Debtors and the Pre-Petition Agent), the stipulations, admissions, and waivers contained in paragraph C of the Final Order, and any consideration granted as adequate protection for the Pre-Petition Lenders in this Final Order, shall be irrevocably binding on the Committee and all parties in interest in these Cases without further action by any party or this Court.

[Main Case, Docket No. 123, ¶ 24] (emphasis added)

Amegy argues that the language in this order clearly states that all parties in interest in this Chapter 11 case have 60 days after the entry on the docket of the interim order to challenge Amegy's liens. The interim order was entered on the docket on November 24, 2009. [Finding of Fact No. 1]. The interim order contained a paragraph with same language as paragraph 24 of the

10

Final DIP Order. [Main Case, Docket No. 91]. Because both the Original Complaint and the Amended Complaint were filed well after the 60 day deadline, Amegy argues that the doctrines of res judicata and collateral estoppel apply to bar the Plaintiffs from going forward. The Plaintiffs, however, contend that the language in the interim order and the Final DIP Order concerns only suits challenging Amegy's liens "on behalf of the Debtors' estates." Here, the Plaintiffs emphasize that they are attacking Amegy's liens not on behalf of the Debtors' estates, but rather on behalf of themselves. Thus, they contend, that the language of the Final DIP Order is no bar at all.

This Court agrees with the Plaintiffs. "The rights and duties of the parties [to a contract] are determined by the local law of the state or country that has the most significant relationship to the transaction and the parties." *Neo Sack, Ltd. v. Vinmar Imprex, Inc.*, 810 F. Supp. 829, 838 (S.D. Tex. 1993). There is no question that with respect to the interpretation of the interim DIP order and the Final DIP Order, Texas law applies. *See Kindler v. Litton Loan Servicing, L.P.*, Case No. C.A. No. 06-cv-293, 2006 U.S. Dist LEXIS 85466, at * 5 (S.D. Tex. Nov. 22, 2006).

Texas contract law "examine[s a contract] as a whole to ascertain the true intent of the parties." *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004) (citing *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 158 (Tex. 1999)). "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). "A court is bound to read all parts of a contract together to ascertain the agreement of the parties. The contract must be considered as a whole. Moreover, each part of the contract should be given effect." 4 EDITH SCHAFFER, TEXAS JURISPRUDENCE PLEADING & PRACTICE FORMS § 72:2 (2d ed.

2002). If the written contract can be given a "definite or certain legal meaning, then it is not ambiguous." *CBI Indus.*, 907 S.W.2d at 520 (citations omitted).

Paragraph 24 plainly states that "the Committee or any other party in interest shall be permitted to file and prosecute an adversary proceeding related thereto, and shall have only until the Pre-Petition Investigation Termination Date to file such adversary proceeding **on behalf of the Debtors' estates** setting forth the basis of any such challenge, claim or causes of action." [Main Case, Docket No. 123, ¶ 24] (emphasis added). Here, the Plaintiffs are not prosecuting this adversary proceeding on behalf of the Debtors' estates. Instead, they are prosecuting it on behalf of themselves. As such, this Court concludes that paragraph 24 does not have any preclusive effect in this instance. If the Debtors and Amegy wanted to prevent third parties such as the Plaintiffs from bringing suits concerning Amegy's liens altogether, then the phrase "on behalf of the Debtors' estates" should not have been used. The parties to the interim order and the Final DIP Order are sophisticated business entities who have extremely capable counsel representing them. The phrase "on behalf of the Debtors' estates" in the interim order and the Final DIP Order is not a scrivener's error, but rather specific language that the parties negotiated and that counsel for the parties drafted and had the opportunity to review and change prior to the submission of the these orders to this Court. Accordingly, the Plaintiffs are not barred from obtaining the relief sought.

C. **The Motion to Dismiss the Original Complaint**

Because this Court has allowed amendment to the Original Complaint, the Motion to Dismiss the Original Complaint is moot, and is therefore dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Motion to Strike the Amended Complaint is denied in its entirety. Because the First Amended Complaint is now the "live" pleading, the Motion to Dismiss the Original Complaint is moot.

An order consistent with this Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 18th day of May, 2010.

_____
Jeff Bohm
United States Bankruptcy Judge