

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
06/09/2011

| | | |
|---|---|---|
| IN RE: | § | |
| **BIGLER LP** | § | **CASE NO. 09-38188** |
| **BIGLER LAND, LLC** | § | **CASE NO. 09-38189** |
| **BIGLER PETROCHEMICAL, LP** | § | **CASE NO. 09-38190** |
| **BIGLER PLANT SERVICES, LP** | § | **CASE NO. 09-38192** |
| **BIGLER TERMINALS, LP** | § | **CASE NO. 09-38194** |
| | § | |
| Debtors. | § | |
| | § | **CHAPTER 11** |
| | § | **Jointly Administered Under** |
| | § | **Case No. 09-38188** |
| | § | |
| **ASHLEY ELIZABETH SCIANNA ARORA** | § | |
| **INVESTMENT TRUST, STEPHANIE** | § | |
| **ELIZABETH SCIANNA INVESTMENT** | § | |
| **TRUST, SIM-TEX, L.P.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | **ADVERSARY NO. 10-03029** |
| | § | |
| **AMEGY BANK NATIONAL** | § | |
| **ASSOCIATION,** | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION REGARDING AMEGY BANK NATIONAL ASSOCIATION'S COUNTERCLAIM
[Adv. Docket No. 19]

### I. INTRODUCTION

On April 1 and 21, 2011, the Court held a hearing on Amegy Bank National Association's Counterclaim for Attorneys' Fees. [Adv. Docket No. 19]. The Court heard testimony from one witness, Charles Scianna (Scianna), who is the trustee of the Plaintiff trusts and the founder and owner of Sim-Tex, L.P. No exhibits were introduced into evidence.

The Court now makes findings of fact and conclusions of law pursuant to Federal

Bankruptcy Rule 7052.  To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent any conclusion of law is construed as a finding of fact, it is also adopted as such.   This Court reserves the right to make additional findings and conclusions as it deems appropriate or as any party may request.

## II. FINDINGS OF FACT

1. On January 23, 2010, the Ashley Elizabeth Scianna Arora Investment Trust and the Stephanie Elizabeth Scianna Investment Trust (the Trusts) initiated this adversary proceeding against Amegy Bank National Association (the Defendant) by filing their Complaint to Determine Extent and Priority of Liens (the Original Complaint).[1] [Adv. Docket No. 1].

2. In the Original Complaint, the Trusts sought a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that "the Trusts hold a first, prior and superior lien and security interest in the Debtors' property listed on Exhibit '1' to secure the repayment of the Bigler Modified Note." [Adv. Docket No. 1, p. 7, ¶ 26(a)].  In the alternative, the Trusts sought a declaration that "any stipulations made by the Debtors in either the Interim DIP Order or the Final DIP Order with respect to the extent and priority of liens and security interests in and to the Debtors' property are not binding on the Trusts." [Adv. Docket No. 1, p. 7, ¶ 26(b)].

3. On March 16, 2010, the Defendant filed its Motion to Dismiss Complaint for Failure to State a Claim upon Which Relief can be Granted (the Defendant's Motion to Dismiss). [Adv. Docket No. 7].  The Defendant argued that the Trusts' lien priority claim fails as a matter of law and, thus, the Original Complaint should be summarily dismissed pursuant

---

[1] Although the third plaintiff in this adversary proceeding—Sim-Tex, L.P. (Sim-Tex)—is not named in the Original Complaint, it is named in the First Amended Complaint filed by the Plaintiffs on May 10, 2010—as subsequently discussed in this Memorandum Opinion.

to Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b). [Adv. Docket No. 7, p. 1–2].

4.   Thereafter, the Trusts, together with Sim-Tex (collectively, the Plaintiffs), filed their First Amended Complaint to Determine Extent and Priority of Liens on May 10, 2010 (the First Amended Complaint). [Adv. Docket No. 9].

5.   While the First Amended Complaint sought the same declaratory relief set forth in the Original Complaint [Adv. Docket No. 9, p. 8–9, ¶¶ 29–32], it did address certain issues raised by the Defendant's Motion to Dismiss and included additional facts that the Plaintiffs assert came into existence or were discovered after the filing of the Original Complaint.  Specifically, the First Amended Complaint: (a) added Sim-Tex as a party; (b) advised of the execution of a correction assignment to address the standing issue raised by the Defendant's Motion to Dismiss; and (c) made factual allegations that the Plaintiffs assert create a purchase money security interest in some of the collateral pledged to secure the indebtedness owed to the Trusts. [Adv. Docket No. 9, p. 1–7].

6.   On May 12, 2010, the Court held a hearing on, among other things, the Defendant's Motion to Dismiss.  At the close of the hearing, the Court took the matter under advisement.

7.   On May 17, 2010, the Plaintiffs filed a Motion to Amend Original Complaint to Determine Extent and Priority of Liens (the Original Motion to Amend). [Adv. Docket No. 14].   In the Original Motion to Amend, the Plaintiffs admitted the following:

> At the [May 12] hearing it became apparent that when filing the amended complaint the Trusts and Sim-Tex mistakenly relied on a provision of the Bankruptcy Rules that has been superseded by an amendment that became effective December 1, 2009.

[Adv. Docket No. 14, p. 2, ¶ 6].  The Plaintiffs requested that the Court grant them leave

to file an amended complaint and thereby retroactively consider the First Amended Complaint as properly filed in accordance with Bankruptcy Rule 7015(a)(2). [Adv. Docket No. 14, p. 3, ¶ 7]. The Court entered an order granting the relief requested in the Original Motion to Amend on June 24, 2010. [Adv. Docket No. 22].

8. The Defendant filed its Original Answer to the First Amended Complaint and Counterclaim on May 28, 2010 (the Counterclaim). [Adv. Docket No. 19]. In the Counterclaim, the Defendant requests that the Court award its costs and reasonable and necessary attorneys' fees pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code and/or 28 U.S.C. §§ 2201–2202. [Adv. Docket No. 19, p. 5, ¶ 34].

9. On December 10, 2010, the Plaintiffs filed a second Motion to Amend Complaint to Determine Extent and Priority of Liens (the Second Motion to Amend). [Adv. Docket No. 31]. The Plaintiffs requested leave to amend the First Amended Complaint so that this Court may determine whether the liens and security interest being asserted as senior and first priority by the Defendant should be subject to equitable subordination pursuant to 11 U.S.C. § 510(c) and/or the state law doctrine of equitable estoppel. [Adv. Docket No. 31, p. 2 & 14].

10. On January 6, 2011, the Court held a hearing on the Second Motion to Amend. The Court entered its Order Denying the Second Motion to Amend on January 14, 2011. [Adv. Docket No. 44]. The Court found that: "(1) there has been undue delay on behalf of the Plaintiffs in filing this Motion; (2) there would be undue prejudice to the Defendant if this Court granted the Motion; and (3) the proposed amendments contain causes of action on which the Plaintiffs are not likely to prevail." [Adv. Docket No. 44, p. 2].

11. On January 20, 2011, the Plaintiffs filed their Answer to the Counterclaim, asserting that: (a) 28 U.S.C. §§ 2201–2202 does not explicitly provide for the award of attorneys' fees and costs; (b) utilization of Section 37.009 to award attorneys' fees and costs should not be permitted in this adversary proceeding; and (c) it would not be equitable and just for the Court to award attorneys' fees and costs to the Defendant. [Adv. Docket No. 46].

12. On January 27, 2011, following a hearing held in this Court on that same day, the Court signed an order granting the Defendant's Motion for Summary Judgment. [Adv. Docket No. 49].  The order expressly denied the Plaintiffs' request for a declaratory judgment and all further relief requested in the First Amended Complaint. [Adv. Docket No. 49, p. 1].  The order also provided that "the Court reserves jurisdiction over, and will hold a separate hearing on, Amegy Bank National Association's counterclaim for attorneys['] fees." [Adv. Docket No. 49, p. 2].

13. On February 3, 2011, counsel for the Plaintiffs and counsel for the Defendant jointly submitted a Stipulation Regarding Defendant's Attorneys' Fees. [Adv. Docket No. 51]. The parties stipulated that for purposes of this adversary proceeding:

   a) the amount of attorney's fees and expenses reasonably and necessarily incurred by Defendant in defending the Adversary Proceeding was $160,000 (the "Reasonable Fee");
   b) the amount of hours and the rates charged by Defendant's attorneys and staff for purposes of computing the Reasonable Fee were reasonable and necessary.

[Adv. Docket No. 51, p. 2, ¶ 5].

14. On February 28, 2011, the Plaintiffs and the Defendant both filed briefs related to the Counterclaim. [Adv. Docket Nos. 52 & 53].

15. The Court held a hearing on the Counterclaim on April 1, 2011.  The Court heard oral argument from counsel for the Defendant and counsel for the Plaintiffs.  No exhibits were

introduced into evidence.

16. At the April 1, 2011 hearing, counsel for the Plaintiffs objected to counsel for the Defendant reading portions of Scianna's deposition transcript into the record on the basis that the transcript had not been admitted into evidence at the hearing. [Tape Recording, 4/1/2011 Hearing at 10:12:55 a.m.—10:13:55 a.m.].   Counsel for the Defendant responded that the deposition transcript was already in the record and could be considered as evidence before the Court.  Specifically, it was attached as an exhibit to the Defendant's Motion for Summary Judgment, and the Plaintiffs did not object to its inclusion as summary judgment evidence. [Tape Recording, 4/1/2011 Hearing at 10:13:55 a.m.—10:14:22 a.m.].  The Court sustained the Plaintiffs' objection since the transcript had not been admitted into evidence at the hearing being held on the Counterclaim. [Tape Recording, 4/1/2011 Hearing at 10:14:23 a.m.—10:14:40 a.m.].

17. Counsel for the Defendant then called Scianna as a witness.  Counsel for the Plaintiffs objected on the basis that counsel for the Defendant did not provide him with a witness or exhibit list prior to the hearing. [Tape Recording, 4/1/2011 Hearing at 10:16:09 a.m.—10:16:49 a.m.].  The Court sustained the objection. [Tape Recording, 4/1/2011 Hearing at 10:16:49 a.m.—10:17:14 a.m.].  Counsel for the Plaintiffs then made an oral motion for judgment based on the fact that the Defendant had not admitted any evidence. [Tape Recording, 4/1/2011 Hearing at 10:17:15 a.m.—10:17:34 a.m.].  The Court declined to grant the oral motion for judgment and continued the hearing until April 21, 2011. [Tape Recording, 4/1/2011 Hearing at 10:17:35 a.m.—10:18:30 a.m.; 10:43:35 a.m.—10:46:50 a.m.].

18. On April 19, 2011, the Defendant filed a Supplement to its Brief in Support of

Counterclaim for Attorneys' Fees Addressing Issues Raised During April 1, 2011 Hearing (the Defendant's Supplemental Brief). [Adv. Docket No. 64].

19. On April 21, 2011, the Court held its continued hearing on the Counterclaim.  Counsel for the Plaintiffs called Scianna as a witness.  No exhibits were admitted into evidence. At the close of the hearing, the Court took the matter under advisement.

20. Scianna testified that in September 2008, Sim-Tex made a $10 million loan to Bigler LP (Bigler) to allow for the construction and completion of the HPIB facility. [Tape Recording, 4/21/2011 Hearing at 11:51:29 a.m.—11:52:09 a.m.].  According to Scianna, Sim-Tex conditioned the loan on it obtaining a security interest in the HPIB equipment. [Tape Recording, 4/21/2011 Hearing at 11:53:18 a.m.—11:54:40 a.m.].  Scianna testified that he was assured by one of the Defendant's representatives that the Defendant did not have a lien on the HPIB equipment at the time Sim-Tex provided the loan to Bigler. [Tape Recording, 4/21/2011 Hearing at 4:03:54 p.m.—4:04:03 p.m.].  After completing the loan, the Trusts took an assignment of the Bigler note from Sim-Tex. [Tape Recording, 4/21/2011 Hearing at 11:55:28 a.m.—11:55:33 a.m.].

21. Scianna asserted that at the time Bigler filed its Chapter 11 petition, he did not believe it was necessary to take any action to determine the priority of liens held by the Defendant and the Trusts.  He stated: "I had an executed note, letter of intent, a . . . leasehold deed of trust.  I had conversations with Bigler, Amegy, [and] my attorneys. I didn't feel there was any need to do anything at the time.  Nobody was disputing—there was no dispute at the time." [Tape Recording, 4/21/2011 Hearing at 2:57:14 p.m.—2:57:55 p.m.].  According to Scianna, the Trusts filed this adversary proceeding in January of 2010 in response to certain provisions set forth in the secured, super-priority debtor-in-possession credit

agreement between Bigler and the Defendant.  Pursuant to the terms of this agreement, the Defendant held a first lien on all of Bigler's assets absent a valid claim to the contrary. [Tape Recording, 4/21/2011 Hearing at 2:57:55 p.m.—2:58:33 p.m.; 2:59:48 p.m.—3:00:24 p.m.].

22. Scianna testified that at the time of the filing of the adversary proceeding, he believed the Defendant's claim to a senior lien position on the collateral was contingent on whether the debtor-in-possession credit agreement was approved. [Tape Recording, 4/21/2011 Hearing at 3:04:35 p.m.—3:05:03 p.m.].  When asked how he became aware of the possibility of a lien priority dispute, he stated: "I can't tell you at this moment what I knew when or when I knew it.  I can tell you what I now know.  At some point, my attorneys came to me and said there may be an issue with the filing date of your lien." [Tape Recording, 4/21/2011 Hearing at 3:05:12 p.m.—3:05:51 p.m.].  On cross examination, however, Scianna admitted that during his deposition he testified that he learned in July or August of 2009 that the security agreement was not signed and the financing statement was not filed at the time Sim-Tex loaned the funds to Bigler. [Tape Recording, 4/21/2011 Hearing at 3:21:13 p.m.—3:26:34 p.m.].  He then stated that since his deposition, he has learned that the conversation giving rise to this discovery actually occurred in August or September of 2009—with his best guess being late September. [Tape Recording, 4/21/2011 Hearing at 3:26:34 p.m.—3:29:08 p.m.].

23. Scianna also testified that at this same meeting in August or September of 2009 he was given a copy of the 2009 credit agreement which scheduled and listed the Plaintiffs' first lien position in the HPIB equipment. [Tape Recording, 4/21/2011 Hearing at 3:43:14

p.m.—3:44:27 p.m.].[2]  He later admitted, however, that he previously testified he did not read or have access to the 2009 credit agreement before filing this adversary proceeding. [Tape Recording, 4/21/2011 Hearing at 3:44:33 p.m.—3:45:48 p.m.].  When confronted with the conflicting testimony, he attempted to distinguish the two statements by asserting that in the meeting in August or September of 2009, he was not actually given a copy of the credit agreement; rather, he was shown portions of the credit agreement by his counsel. [Tape Recording, 4/21/2011 Hearing at 3:45:48 p.m.—3:46:35 p.m.].

24. Scianna testified that both at the time the Plaintiffs filed their financing statement (i.e., January of 2009), as well as at the time the Plaintiffs filed their First Amended Complaint (i.e., May of 2010), he believed the HPIB equipment was still being delivered to Bigler. [Tape Recording, 4/21/2011 at 4:02:07 p.m.—4:03:01 p.m.].  He purportedly did not learn that the proceeds of Sim-Tex's loan to Bigler were not used to purchase the HPIB equipment during the period of perfection until the Plaintiffs conducted discovery of information in Bigler's bank accounts after the filing of the First Amended Complaint. [Tape Recording, 4/21/2011 Hearing at 3:07:12 p.m.—3:09:26 p.m.].  Upon discovering that there was a defect in the Plaintiffs' purchase money security claim, Scianna allegedly advised his counsel not to oppose the Defendant's Motion for Summary Judgment or otherwise move forward with prosecution of this adversary proceeding.[3]   [Tape

---

[2] At the request of Plaintiffs' counsel, the Court took judicial notice of paragraph 22 of the Original Complaint, in which the Plaintiffs expressly asserted the following:

> Amegy expressly acknowledges pursuant to Paragraph 7.3(b) and Schedule 7.3 of the 2009 Credit Agreement that the Bigler Modified Note is existing indebtedness permitted under the 2009 Credit Agreement for the purpose of the "HPIB process unit," and describes the Bigler Modified Note in Schedule 7.3 as "[s]ecured with 1st Lien on HPIB process unit equipment."

[Tape Recording, 4/21/2011 Hearing at 4:04:07 p.m.—4:05:01 p.m.].

[3] The Plaintiffs' stated in their Response to the Defendant's Motion for Summary Judgment that:

Recording, 4/21/2011 Hearing at 3:09:26 p.m.—3:10:40 p.m.].

25. The Court took judicial notice of paragraphs 17, 20, and 21 of the Original Complaint
    and paragraph 22 of the First Amended Complaint.  Through the language presented in
    these paragraphs, the Plaintiffs admit that: (a) they had a copy of the 2009 credit
    agreement at the time they filed this adversary proceeding; and (b) a financing statement
    covering the HPIB equipment was filed on January 15, 2009 with the Texas Secretary of
    State. [Tape Recording, 4/21/2011 Hearing at 3:53:53 p.m.—3:55:57 p.m.].

### III. CREDIBILITY OF THE WITNESS

Scianna testified at the April 21, 2011, hearing regarding the basis for the Plaintiffs'
claims for declaratory relief at the time they filed both the Original Complaint and the First
Amended Complaint in this adversary proceeding.  He sought to convince the Court that the
Plaintiffs were not in bad faith in pursuing the causes of action set forth in these complaints.
While Scianna did display knowledge of the underlying loan transactions, the Court finds many
of his responses to be evasive and inconsistent.  For example, Scianna testified on direct
examination that at the time of the filing of the adversary proceeding, he believed that the
Defendant's claim to a senior lien position on the collateral was contingent on whether the
debtor-in-possession credit agreement was approved. [Finding of Fact No. 22].  In response to a
question regarding how he became aware of the possibility of a lien priority dispute, he stated, "I
can't tell you at this moment what I knew when or when I knew it.  I can tell you what I now
know.  At some point, my attorneys came to me and said there may be an issue with the filing

---

After consideration of the evidence produced by Defendant to date, it appears that numerous of the
statements and representations made by Bigler to the Plaintiffs were not accurate, including, but
not limited to, the information regarding the payment for and acquisition of the HPIB Equipment.
Consequently, and absent any further relevant information, it is the case that the Defendant's
position regarding the existence of a PMSI is correct.

[Adv. Docket No. 39, p. 2, ¶ 3].

date of your lien." [Finding of Fact No. 22].  After counsel for the Defendant refreshed his recollection, however, Scianna admitted he previously testified that he learned in July or August of 2009 that the security agreement was not signed and the financing statement was not filed at the time Sim-Tex loaned the funds to Bigler. [Finding of Fact No. 22].

Scianna further testified that in August or September of 2009, he was given a copy of the 2009 credit agreement, which scheduled and listed the Plaintiffs as having a first lien position in the HPIB equipment. [Finding of Fact No. 23].  Upon further questioning by counsel for the Defendant, however, he admitted that he previously testified he did not read or have access to the 2009 credit agreement prior to filing this adversary proceeding. [Finding of Fact No. 23].  While attempting to distinguish the two statements, Scianna again contradicted his prior testimony by stating that he was not actually given a copy of the credit agreement at the meeting in August or September of 2009; rather, he was shown portions of the credit agreement by his counsel. [Finding of Fact No. 23].  Based on the foregoing, the Court finds that Scianna was not a particularly credible witness and gives little weight to his testimony.

## IV. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a).  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2).  *See Southmark Corp. v. Coopers & Lybrand* (*In re Southmark Corp.*), 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther* (*In re Ginther Trusts*), Adv. No. 06-3556, 2006 WL 3805670, at

11

*19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance").  Venue is proper pursuant to 28 U.S.C. § 1409.

**B. The Defendant is not entitled to recover its attorneys' fees and costs from the Plaintiffs.**

In the Counterclaim, the Defendant seeks payment of its costs and reasonable and necessary attorneys' fees pursuant to Texas Civil Practice and Remedies Code § 37.009 and/or 28 U.S.C. §§ 2201–2202. [Finding of Fact No. 8].  Because the Plaintiffs and Defendant have stipulated as to the amount of attorneys' fees and expenses reasonably and necessarily incurred by the Defendant in this adversary proceeding [Finding of Fact No. 13], the sole issue remaining for the Court's determination is whether the Defendant is entitled to an award of this agreed amount.  For the reasons set forth below, the Court concludes that the Defendant is not entitled to recover its attorneys' fees and costs from the Plaintiffs.

1. <u>The Texas Declaratory Judgment Act</u>

Section 37.009 of the Texas Civil Practice and Remedies Code expressly provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."  Chapter 37 of the Texas Civil Practice & Remedies Code is entitled "Declaratory Judgments," and it is Texas' codification of the "Uniform Declaratory Judgments Act." *See* Tex. Civ. Prac. & Rem. Code § 37.002(a).  In accordance with the plain language of the statute, Section 37.009 governs a court's award of attorneys' fees and costs in proceedings brought under Chapter 37 of the Texas Civil Practice and Remedies Code. *See, e.g.*, *Cooper v. Cochran*, 288 S.W.3d 522, 530 (Tex. App.—Dallas 2009, no pet.) ("Once the [Texas] declaratory judgment statute has been *invoked*, the award of attorney's fees is not

limited to the party seeking declaratory relief.") (emphasis added); *Meeker v. Tarrant Cnty. Coll. Dist.*, 317 S.W.3d 754, 762 (Tex. App.—Fort Worth 2010, no pet.) (noting that Section 37.009 authorizes "an 'award [of] costs and reasonable and necessary attorney's fees as are equitable and just' in any proceeding under Chapter 37") (quoting Tex. Civ. Prac. & Rem. Code § 37.009). The Plaintiffs in this adversary proceeding specifically pled for a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202, not Chapter 37 of the Texas Civil Practice and Remedies Code. [Finding of Fact Nos. 2 & 5]. Since this is a proceeding brought under the Federal Declaratory Judgment Act rather than the Texas Declaratory Judgment Act, the Defendant is not entitled to recover its attorneys' fees and costs pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code.

Further, the Court acknowledges that the Fifth Circuit has held in both federal question and diversity cases that Section 37.009 of the Texas Civil Practice and Remedies Code does not provide a basis for an award of attorneys' fees. *See AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 701 (5th Cir. 2009); *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 209–10 (5th Cir. 1998) (holding that Section 37.009 of the Texas Civil Practice and Remedies Code did not provide a basis for an award of attorneys' fees in a diversity case pled under the Federal Declaratory Judgment Act "because the statute is not substantive law"); *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409–10 (5th Cir.), *cert. denied*, 549 U.S. 826 (2006) (reaffirming the validity of *Utica* and noting that "*Utica* is not distinguishable on the ground that this case arrived in federal court via federal question, rather than diversity, jurisdiction"). Indeed, in arriving at the holding set forth in *Utica*, the Fifth Circuit relied on its prior decision in *Self-Ins. Inst. of Am., Inc. v. Korioth*, 53 F.3d 694 (5th Cir. 1995), a case arising out of federal question jurisdiction. *Utica*, 138 F.3d at 210 ("Though jurisdiction in *Korioth* arose through a federal question claim

13

rather than diversity, the decision's language clearly indicates, and we now hold, that a party may not rely on the Texas DJA to authorize attorney's fees in a diversity case because the statute is not substantive law.").[4]

In *Camacho*, the Fifth Circuit acknowledged that several panel opinions issued subsequent to *Utica* reached contrary results when evaluating causes of action pled under the Texas Declaratory Judgment Act. 445 F.3d at 410 (citing *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000); *Garza v. Coates Energy Trust* (*In re Garza*), 90 F. App'x 730, 732–34 (5th Cir. 2004)).[5]   However, because the earliest of conflicting panel decisions controls and the Fifth Circuit found that *Utica* did not conflict with prior precedent, it affirmed the district court's denial of attorneys' fees on claims for declaratory relief sought under the Texas statute and thereafter removed to federal court under federal question jurisdiction. *Camacho*, 445 F.3d at 409–11.

The Fifth Circuit also discussed why it believes *Utica* comports with general *Erie* principles—specifically, that the Texas Declaratory Judgment Act does not tie fee awards to the outcome of the litigation and is therefore distinguishable from the substantive fee-shifting statutes discussed in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). *Id*. at 412–13.   The Fifth Circuit stated that its "decisions following *Chambers* recognize that only fee-shifting statutes limiting fee awards to prevailing parties are substantive for *Erie* purposes." *Id*. at 412.   Thus, "we

---

[4] In *Korioth*, the Fifth Circuit emphasized that the Texas Declaratory Judgment Act was inapplicable because "[j]urisdiction in this case is under 28 U.S.C.A. § 1331 (West 1993) (federal question jurisdiction), not diversity where state law applies." 53 F.3d at 697.   Thus, in determining that the Texas Declaratory Judgment Act was "neither substantive nor controlling," the Fifth Circuit appeared to be relying, at least in part, on the fact that the claim for declaratory relief was sought under federal rather than Texas state law.   Such rationale comports with this Court's earlier conclusion that the Defendant is not entitled to recover its attorneys' fees under Section 37.009 of the Texas Civil Practice and Remedies Code because the Plaintiffs sought relief pursuant to the Federal Declaratory Judgment Act.

[5] Both of these cases cited in *Utica* involve claims for declaratory relief that were originally pled in Texas state court under the Texas statute and later removed to federal court. *See Kona*, 225 F.3d at 601; *Garza*, 90 F. App'x at 731–32.

14

conclude that the [Texas] DJA is procedural for *Erie* purposes under *Chambers* and its Fifth

Circuit progeny." *Id*. at 413; *accord Bloss v. Moore*, 269 F. App'x 446, 449 (5th Cir. 2008)

("[T]his court has held that under *Erie* principles the Texas Declaratory Judgment Act is

procedural and thus not applicable in federal court.").

This rationale, coupled with an unpublished Fifth Circuit opinion issued prior to

*Camacho*, indicates that the Texas Declaratory Judgment Act is not available as a basis for

awarding attorneys' fees in federal bankruptcy proceedings. *Trinh v. Intertex, Inc.* (*In re Trinh*),

210 F.3d 369, No. 99-20303, 2000 WL 294460, at *4 (5th Cir. Feb. 25, 2000) (unpublished).[6]  A

recent opinion issued by a bankruptcy court in the Southern District of Texas reached this same

result. *Harmon v. Lighthouse Capital Funding, Inc.* (*In re Harmon*), 2011 WL 1457236, at *4–9

(Bankr. S.D. Tex. Apr. 14, 2011) (holding that the Texas Declaratory Judgment Act did not

provide a basis for an award of attorneys' fees in a declaratory judgment action removed from

state court because, in accordance with Fifth Circuit law, the statute is procedural rather than

substantive in nature).  Accordingly, for all the reasons set forth above, the Court concludes that

the Defendant is not entitled to an award of its reasonable attorneys' fees and costs against the

Plaintiffs under Section 37.009 of the Texas Civil Practice and Remedies Code.

　　　2. The Federal Declaratory Judgment Act

28 U.S.C. § 2201, which authorizes federal courts to grant declaratory relief, does not

provide a basis for recovery of attorneys' fees.[7]  Likewise, Section 2202, which provides "further

---

[6] In *Trinh*, the Fifth Circuit noted that the appellant may have waived his best argument for denying the district court's award of attorneys' fees by failing to raise it on appeal. *Id*. (citing *Utica*, 138 F.3d at 210) ("We have previously held that § 37.009 is a procedural rule rather than a substantive one, so that provision is not available in federal court.").  However, the Fifth Circuit did not expressly rule as to the applicability of *Utica*'s holding in bankruptcy proceedings. *Trinh*, 2000 WL 294460, at *4 ("We do not hold, therefore, that fees under § 37.009 are available in federal bankruptcy proceedings, only that Trinh has failed to raise the unavailability of such fees in bankruptcy proceedings.").

[7] The statute expressly sets forth that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the

necessary and proper relief based on a declaratory judgment or decree," does not grant statutory authority for an award of attorneys' fees on its face. *Korioth*, 53 F.3d at 697 (citing *Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988)).[8]  However, an award of attorneys' fees under 28 U.S.C. § 2202 is permitted pursuant to a court's equitable powers in "cases of bad faith, vexation, wantonness, or oppression relating to the filing or maintenance of the action." *W. Heritage Ins. Co. v. Robertson*, 224 F.3d 764, No. 99-10294, 2000 WL 992178, at *3 (5th Cir. June 19, 2000) (unpublished) (quoting *Mercantile*, 850 F.2d at 218); *accord Allstate Ins. Co. v. Mader*, 201 F. App'x 261, 264 (5th Cir. 2006).  When a court awards attorneys' fees based on a finding of bad faith, the "underlying rationale of fee shifting is, of course, punitive." *Allstate*, 201 F. App'x at 264 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 53 (1991)) (internal quotation marks omitted).  A party requesting attorneys' fees bears the burden of proof. *U.S. for Varco Pruden Bldgs. v. Reid & Gary Strickland Co.*, 161 F.3d 915, 919 (5th Cir. 1998).

Indeed, federal courts generally have an inherent power to impose sanctions, including attorneys' fees, against a vexatious litigant. *Newby v. Enron Corp.*, 302 F.3d 295, 302 (5th Cir. 2002); *Chambers*, 501 U.S. at 45–46 (holding that "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons").  The imposition of sanctions pursuant to the court's inherent power is limited and should be reserved for situations in which the court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled." *Chambers*, 501 U.S. at 46 (internal quotations and citation omitted);

United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

[8] 28 U.S.C. § 2202 states in full that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

*see also Newby*, 302 F.3d at 302 (noting that a court's reach is "limited by its ultimate source—the court's need to orderly and expeditiously perform its duties").  The imposition of sanctions pursuant to a litigant's bad faith conduct "transcends a court's equitable powers concerning relations between the parties and reaches a court's inherent power to police itself." *Chambers*, 501 U.S. at 46 (internal quotations and citation omitted).  While the Fifth Circuit in *Western Heritage* categorizes the award of attorneys' fees as being "pursuant to the district court's equitable powers under 28 U.S.C. § 2202," it notes that such an award is really an exercise of the court's inherent power to impose sanctions. *W. Heritage*, 2000 WL 992178, at *3 n.2 ("Notwithstanding the district court stating the award was pursuant to § 2202, the parties' briefs refer to the award as being an exercise of the court's inherent powers.  For purposes of this appeal, it is a distinction without a difference."); *accord Mercantile*, 850 F.2d at 218 (noting that 28 U.S.C. § 2202 does not by itself provide statutory authority to award attorneys' fees, but recognizing that a court has equitable power to award legal fees in certain limited circumstances, including pursuit of an action in bad faith).

The Defendant argues that the Plaintiffs knew, both at the time they filed this adversary proceeding to determine lien priority and at the time they amended the Original Complaint to assert a purchase money lien theory, that they had failed to timely perfect their security interest in the property, and it points to Scianna's deposition transcript as straight-forward and unequivocal evidence of this knowledge. [Adv. Docket No. 64, p. 2–3, ¶¶ 3–5].  However, Scianna's deposition transcript was not admitted into evidence at the hearings held on the Counterclaim. [Finding of Fact Nos. 15 & 19].  The Defendant nevertheless asserts that the Court may consider this deposition testimony in determining whether the Plaintiffs commenced this adversary proceeding in bad faith.  For the reasons set forth below, the Court disagrees with the

Defendant's conclusion.

>    i. *Scianna's deposition testimony is not part of the evidentiary record on the Counterclaim.*

First, attaching excerpts of Scianna's deposition transcript to three different filings with this Court does not equate to presenting his deposition testimony as evidence at the hearings on the Counterclaim.   In a contested hearing, each party has a duty to offer into evidence any exhibits it seeks to include as part of the evidentiary record. *See, e.g., Sec'y of Labor v. DeSisto*, 929 F.2d 789, 796 (1st Cir. 1991) (finding the district court committed error in relying on depositions that were not properly introduced into evidence at trial); *In re Holly's, Inc.*, 190 B.R. 297, 301 (Bankr. W.D. Mich. 1995) ("The documents attached to the State's brief were not properly admitted into evidence and, therefore, cannot be considered by this court in ruling on the Motion.").   In fact, this Court has previously declined to consider documents attached to a party's response that were not formally admitted into evidence. *In re Depugh*, 409 B.R. 84, 109–10 (Bankr. S.D. Tex. 2009) ("Documents attached to legal briefs, or documents which are merely filed on the court's docket record, do not constitute evidence concerning a matter before the court unless those documents are specifically made a part of an evidentiary record applicable to a particular proceeding.   This is true regardless of the independent admissibility of those documents . . . .") (quoting *In re Watson*, 402 B.R. 294, 297 (Bankr. N.D. Ind. 2009)).

The Defendant asserts that attaching Scianna's deposition transcript as an exhibit to its Motion for Summary Judgment, its response to the Second Motion to Amend, and its brief related to the Counterclaim made Scianna's testimony "part of the Court's record 'for all purposes.'" [Adv. Docket No. 64, p. 3, ¶¶ 4 & 7] (citing Fed. R. Civ. P. 7; Fed. R. Civ. P. 10). The Court disagrees that the language within the cited rules supports the Defendant's conclusion. Rather, Federal Rule of Civil Procedure 10(c), read in conjunction with Federal Rule of Civil

18

Procedure 7, simply provides that an exhibit to a pleading, motion, or other document filed with a court is considered part of that document "for all other purposes."[9]  It does not necessarily follow that an exhibit attached to a pleading or motion is automatically part of the record to be considered by a court for any purpose.

The remainder of the authority cited by the Defendant also fails to support its argument. *See, e.g.*, *Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 45 (2nd Cir. 1975) (citing *Todd v. Nello L. Teer Co.*, 308 F.2d 397, 399 (5th Cir. 1962)) (noting merely that filing a document with a court is what determines whether a particular document will be included in the trial record submitted on appeal).[10]  While Scianna's deposition testimony is part of the Court's record in this adversary proceeding as summary judgment evidence, it is not part of the evidentiary record established at the contested hearings on the Counterclaim because it was not offered into evidence at either the April 1 hearing or the April 21 hearing. [Finding of Fact Nos. 15 & 19]. Accordingly, the Defendant's discussion regarding the submission of evidence through a summary judgment motion, and the procedures necessary to object to such evidence, is likewise not instructive to its argument that Scianna's deposition testimony is evidence before the Court on the Counterclaim.[11]

---

[9] Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Federal Rule of Civil Procedure 7 relates Rule 10(c) to motions and other pleadings. Fed. R. Civ. P. 7 ("The rules governing captions and other matters of form in pleadings apply to motions and other papers.").

[10] Based on this authority, the Defendant asserts in its Supplemental Brief that "the whole point of attaching an exhibit to a motion is to put that evidence before the Court as part of the Court's record." [Adv. Docket No. 64, p. 4, ¶ 8].  As noted, however, *Edelstein* simply emphasizes that documents must be filed with the court in order to be considered part of the trial record on appeal. 526 F.2d at 45.  The opinion did not address whether an exhibit attached to a motion, response, or brief is part of the evidentiary record to be considered by a court in resolving a contested matter for which a hearing has been held. *Id.*

[11] The Defendant discusses Federal Rule of Civil Procedure 56 and cases interpreting it in positing that Scianna's deposition testimony is evidence that has already been considered and accepted by the Court in this adversary proceeding. [Adv. Docket No. 64, p. 4–5, ¶¶ 9–10].  The Court does not dispute that the Defendant properly submitted Scianna's deposition transcript as summary judgment evidence.  The Court notes, however, that whether

ii. *The Court will not consider Scianna's deposition testimony as part of the entire record of this adversary proceeding when determining whether to grant the Counterclaim.*

The Defendant argues alternatively that the Court may consider the entire record of this adversary proceeding in assessing whether the Plaintiffs filed this adversary proceeding in bad faith.  In support of its position, it cites a number of cases—only one of which addresses the award of attorneys' fees pursuant to 28 U.S.C. § 2202. [Adv. Docket No. 64, p. 5, ¶¶ 11–12; Tape Recording, 4/21/2011 Hearing at 11:49:15 a.m.—11:50:20 a.m.].   The lower court's determination of bad faith in *Western Heritage* was based on its evaluation of the parties' conduct throughout the duration of the case, dating back to the original state court suit initiated prior to removal. 2000 WL 992178, at *3.  The Fifth Circuit did not discuss, however, how the information came to the attention of the lower court; it simply noted that the lower court made findings of fact that detailed conduct from the state court proceeding. *Id.*  This Court is left to assume that the lower court's findings of fact in *Western Heritage* were based on evidence presented to the court on the issue of attorneys' fees, rather than a *sua sponte* evaluation of everything that had transpired in the case. *Id.* at *2 ("The district court, on Western's post-remand motion, and based upon detailed findings of fact and conclusions of law, awarded fees . . . pursuant to its 28 U.S.C. § 2202 declaratory judgment equitable powers . . . .").

Therefore, the Court is not persuaded that it must look to the entire record of this adversary proceeding in determining whether to award the Defendant's attorneys' fees against the Plaintiffs.  For all of the reasons set forth above, the Court will only consider the evidence admitted at the hearings on the Counterclaim, which is limited to Scianna's testimony at the April 21 hearing.

---

or not his deposition testimony was considered by this Court in ruling on the Motion for Summary Judgment is not instructive to the evidentiary issue presented at the April 1, 2011, hearing on the Counterclaim.

iii. *Scianna's testimony does not provide evidence of bad faith sufficient to warrant granting the Counterclaim.*

While the Court did not find Scianna to be a particularly credible witness, nothing in his testimony provides the evidence of bad faith necessary to meet the Defendant's burden of proof. Scianna testified that he was assured by one of the Defendant's representatives that the Defendant did not have a lien on the HPIB equipment at the time Sim-Tex made the $10 million loan to Bigler. [Finding of Fact No. 20].  The Trusts allegedly initiated this adversary proceeding in January of 2010 in response to the debtor-in-possession credit agreement between Bigler and the Defendant. [Finding of Fact No. 21].  According to the terms of this agreement, the Defendant held a first lien on all of Bigler's assets absent a valid claim to the contrary. [Finding of Fact No. 21].  At the time the Original Complaint was filed, Scianna purportedly believed that the Defendant's claim to a senior lien position on the HPIB equipment was contingent on whether the debtor-in-possession credit agreement was approved. [Finding of Fact No. 22].  He stated that he did not remember when he became aware of a lien priority dispute, but he acknowledged that "[a]t some point, my attorneys came to me and said there may be an issue with the filing date of your lien." [Finding of Fact No. 22].

The Court recognizes that certain testimony elicited during Scianna's cross examination did call into question the validity of these assertions.  First, Scianna admitted that he previously testified he learned in July or August of 2009 that the security agreement was not signed and the financing statement was not filed at the time Sim-Tex loaned the funds to Bigler. [Finding of Fact No. 22].  He proceeded to correct the time frame cited during his deposition; he stated that the conversation giving rise to this discovery actually occurred in either August or September of 2009, with his best guess being late September. [Finding of Fact No. 22].  Regardless of whether Scianna gained this knowledge in early July or late September of 2009, he was still aware of the

facts prior to the filing of the Original Petition in January of 2010 [Finding of Fact No. 1], and such information should have alerted him to potential issues with the priority of the Plaintiffs' lien on the HPIB equipment.

Scianna further testified, however, that at this same meeting in August or September of 2009, he was shown a copy of the 2009 credit agreement which supposedly scheduled and listed the Plaintiffs as having a first lien position in the HPIB equipment. [Finding of Fact No. 23]. While counsel for the Defendant brought to light certain inconsistencies in Scianna's prior testimony regarding his access to and knowledge of the 2009 credit agreement, the Plaintiffs cited to the agreement in their Original Complaint.   Thus, they undoubtedly relied on the document in initiating this adversary proceeding. [Finding of Fact No. 25].   Moreover, Scianna believed the HPIB equipment was still being delivered to Bigler both at the time the Plaintiffs filed their financing statement as well as when they filed the First Amended Complaint. According to his own testimony, Scianna did not learn that the proceeds of Sim-Tex's loan to Bigler were not used to purchase the HPIB equipment during the perfection period until the Plaintiffs conducted discovery of information in Bigler's bank accounts after the filing of the First Amended Complaint. [Finding of Fact No. 24].   Upon discovering that there was a defect in the Plaintiffs' purchase money security interest, Scianna allegedly advised his counsel not to oppose the Defendant's Motion for Summary Judgment or otherwise move forward with prosecution of this adversary proceeding. [Finding of Fact No. 24].   Indeed, the Plaintiffs stated in their Response to the Motion for Summary Judgment that:

> After consideration of the evidence produced by Defendant to date, it appears that numerous of the statements and representations made by Bigler to the Plaintiffs were not accurate, including, but not limited to, the information regarding the payment for and acquisition of the HPIB Equipment.   Consequently, and absent any further relevant information, it is the case that the Defendant's position regarding the existence of a PMSI is correct.

22

[Finding of Fact No. 24].

Prior to the Court issuing its ruling on the Motion for Summary Judgment, however, the Plaintiffs pursued an alternative course by asserting in their Second Motion to Amend that the Defendant's security interest in the HPIB equipment should be subject to equitable subordination and/or the state law doctrine of equitable estoppel. [Finding of Fact Nos. 9 & 12].  After holding a hearing on the matter, the Court issued its Order Denying the Second Motion to Amend based on, among other things, the futility of the proposed amendments in light of the information known to the Plaintiffs at that time. [Finding of Fact No. 10].

The Court agrees that there is at least some evidence indicating that at the time the Plaintiffs filed the Original Complaint and the First Amended Complaint Scianna knew, or at least had reason to know, that the Plaintiffs did not have a valid priority lien on the HPIB equipment due to issues with perfection of their interest. [Finding of Fact No. 22].  In addition, the Court has already held that the Plaintiff sought leave of this Court to pursue seemingly baseless causes of action in the Second Amended Complaint. [Finding of Fact No. 10].  The Court is unwilling to conclude, however, that this adversary proceeding involved "bad faith, vexation, wantonness, or oppression relating to the filing or maintenance of the action." *See W. Heritage*, 2000 WL 992178, at *3.  The facts presented in this suit certainly do not rise to the level of egregiousness necessary to warrant sanctioning the Plaintiffs pursuant to the Court's inherent power. *See Chambers*, 501 U.S. at 46; *Newby*, 302 F.3d at 302.  In upholding the award of attorneys' fees in *Western Heritage*, the Fifth Circuit emphasized the extent of the appellants' absolute abuse of the system. 2000 WL 992178, at *1–4 (noting that the plaintiff and his attorney knowingly sued and served a defendant who was not liable for the damages alleged, collected a default judgment, filed additional frivolous suits, forged correspondence from another party,

failed to respond to discovery, and admittedly prepared a motion on behalf of another party whom the plaintiff sued). [12]

The Plaintiffs' conduct in the suit at bar does not come within hailing distance of the bad faith, vexatious actions of the plaintiff and his attorney in *Western Heritage*. Although unfounded, Scianna had at least an arguable basis for pursuing a declaratory action on behalf of the Trusts in the Original Complaint—namely, that such an action was necessary to preserve any potential claim to the HPIB equipment in light of the debtor-in-possession credit agreement between the Defendant and Bigler. [Finding of Fact Nos. 21 & 22]. Also, Scianna purportedly instructed his counsel not to oppose the Defendant's Motion for Summary Judgment once he learned through discovery that proceeds of Sim-Tex's loan were not used to purchase the HPIB

---

[12] The plaintiff's vehicle was damaged in a car accident. He received a handwritten note from the responsible party at the scene of the accident, which admitted fault and stated the name of the responsible party's current employer. The vehicle driven by the responsible party was actually owned by another company. After being notified about the accident, the insurance company for the responsible party's current employer issued a letter denying coverage because: (a) the vehicle involved in the accident was not owned by the company; and (b) the responsible party was not an employee listed on the policy. The plaintiff nevertheless filed a state court action against the responsible party and his current employer on the grounds that the employer owned the vehicle. Further, the plaintiff served the owner's son at his home address, rather than serving the owner of the company at the current company address. When the owner's son failed to answer, the plaintiff took a default judgment against the owner's son. The responsible party was non-suited because he allegedly could not be located for service of process. Shortly thereafter, the plaintiff filed another state court action against the responsible party. The plaintiff's attorney prepared a letter, falsely purporting to be from the employer's insurance company, which requested the responsible party's signature to assume representation of the matter. The responsible party received this letter in conjunction with the plaintiff's demand letter. *Id.* at *1. Meanwhile, the plaintiff successfully sought the appointment of a receiver for the employer. Upon appointment, the receiver, represented by the plaintiff's attorney, filed an alternate coverage action in state court against the insurance company. Prior to receiving service in this coverage action, the insurance company filed a declaratory judgment action in federal court against the plaintiff, the responsible party, and the employer, asserting that it was not liable for the damages incurred in the accident. The plaintiff's attorney answered only on behalf of the plaintiff in the declaratory judgment action. Within several months, however, the plaintiff signed a settlement agreement with the owner's son, in which the owner's son agreed not to contest the state court's default judgment in exchange for one-third of the recovery from the insurance company. The district court later learned that this agreement also established a formal attorney-client relationship between the plaintiff's attorney and the owner's son. When the insurance company sought discovery of this agreement, the plaintiff failed to produce it and denied it even existed. The plaintiff's attorney also prepared a *pro se* motion to set aside a default judgment taken against the owner's son in the federal declaratory judgment action. The district court granted summary judgment on behalf of the insurance company and awarded the insurance company's attorneys' fees against the plaintiff and the employer pursuant to the Texas Declaratory Judgment Act. The Fifth Circuit affirmed the judgment, but held fees could not be awarded pursuant to the Texas statute. On remand, the district court awarded the insurance company's attorneys' fees against the plaintiff and his attorney pursuant to "its 28 U.S.C. § 1927 declaratory judgment equitable powers." *Id.* at *2.

equipment during the perfection period, and, thus, the purchase money theory asserted in the First Amended Complaint could not prevail. [Finding of Fact No. 24].  Neither Scianna nor his counsel knowingly sued improper parties, falsified documents, withheld discovery, or improperly represented opposing parties in this adversary proceeding.  Accordingly, for all the reasons set forth above, the Court concludes that the Defendant is not entitled to recover its attorneys' fees pursuant to the Federal Declaratory Judgment Act.

### V. CONCLUSION

In sum, the Court declines to award the Defendant its reasonable attorneys' fees and costs pursuant to either Texas Civil Practice and Remedies Code § 37.009 or 28 U.S.C. §§ 2201–2202. First, Section 37.009 is not applicable to this adversary proceeding because the Plaintiffs pled for declaratory relief pursuant to the Federal Declaratory Judgment Act in the Original Complaint and the First Amended Complaint.  Furthermore, Fifth Circuit case law indicates that the Texas Declaratory Judgment Act is not available in federal bankruptcy court because the statute is procedural, rather than substantive, in nature.  Second, the Federal Declaratory Judgment Act does not by itself provide a basis for awarding the Defendant's attorneys' fees against the Plaintiffs.  Rather, such an award must be made pursuant to one of the exceptions recognized by the Fifth Circuit, including bad faith, vexation, wantonness, or oppression relating to the filing or maintenance of this adversary proceeding.  Based on the evidence presented at the hearings on the Counterclaim, the Court concludes that the Plaintiffs' conduct does not rise to the level necessary to warrant an award of attorneys' fees to the Defendant.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 9th day of June, 2011.

_____
Jeff Bohm
United States Bankruptcy Judge